UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PATRICK C. McCANN, TERRIAL BLAKELY,
CEDRIC BLAKELY, ISAAC H. HARRIS,
PATRICK FISHER, BERNARD GRAY, JOSEPH
R. NICHOLS, DARNELL J. CAMERON, MARCUS
O. FIGGERS, EDDIE L. HARRIS, THOMAS T.
JACKSON, ANTONIOUS NELSON, DANTEL T.
SMITH, LORENZO FIELDS, LARRY BISHOP,
MELVIN BISHOP, WESLEY CHAMBERS, ALTON
D. COOLEY, DONALD LATHAN, LaDERRY LOPER,
WILLIE LOPER, DANIEL MOORE, JOSEPH MOSS,
CHARLTON NELSON, DeAUNDRAE PARKER,
ERIC PITTMAN, KEVIN SMITH, and TERENCE STOKES                    PLAINTIFFS

V.                                                   CIVIL ACTION NO.: 3:10-cv-52-DPJ-FKB

W.C. PITTS CONSTRUCTION CO., INC.;
BILLY D. PITTS, and CYNTHIA A. PITTS                              DEFENDANTS

ORDER

This wage-and-hour dispute under the Fair Labor Standards Act ("FLSA") is before the

Court on Motion for Summary Judgment [21] filed by Defendants W.C. Pitts Construction Co.,

Inc., Billy D. Pitts, and Cynthia A. Pitts (collectively referenced as "Pitts").  The Plaintiffs have

responded in opposition [25].  Pitts's summary judgment motion includes an unopposed Motion

in Limine.  Having considered the submissions of the parties and the applicable law, the Court

finds that Pitts's Motion for Summary Judgment should be denied in part and granted in part.

The Court further finds that Pitts's Motion in Limine should be granted as agreed upon by the

parties.

I.       FACTS AND PROCEDURAL HISTORY

Former employees of W.C. Pitts Construction Co., Inc., have alleged that Pitts failed to

compensate them for all hours worked and wrongfully paid them for overtime work at their

regular straight time rate—not one and one-half times their straight time rate, as required by FLSA.[1]

Pitts was involved in a variety of construction enterprises, including a three-year contract to perform erosion control at Camp Shelby military base.  All Plaintiffs worked on the Camp Shelby contract for varying lengths of time; and the bulk of the alleged FLSA violations described by the Plaintiffs occurred during the Camp Shelby contract.

According to the Plaintiffs, Pitts required all workers to meet at the Pitts office location early in the morning before traveling to their worksites in company vehicles.  During this morning meet time, Billy Pitts assessed the number of employees present and determined whether he needed to hire any standby workers to complete the day's tasks.  Plaintiffs also allege that prior to traveling to the worksite, they loaded equipment into vehicles, fueled several vehicles, and also fueled three tanks containing off-road diesel, on-road diesel, and regular gasoline.  Following the return trip to the office, Plaintiffs unloaded equipment.  Plaintiffs estimate that travel time between the Pitts office and Camp Shelby is approximately one hour and 20 minutes, one way.  Plaintiffs allege that Pitts did not fully compensate them for this travel time, and most who rode to Camp Shelby allege that Pitts did not pay for any travel time at all.  Plaintiffs also complain that when they were paid in cash—and some state they were always paid in cash—Pitts paid them for overtime work at their regular straight time rate.

Pitts now moves for summary judgment against the Plaintiffs' claims.  Pitts argues that travel time between the Pitts office to worksites, such as Camp Shelby, is not compensable under

---

[1]29 U.S.C.A. § 201 (2011), et seq.

the Portal-to-Portal Act.[2]  Pitts further argues that the Plaintiffs' claims are so speculative that

this Court should dismiss the claims of all Plaintiffs except seven former employees to whom

Pitts admits owing overtime wages.  *See* Defs.' Mot. Summ. J.[21] Ex. N, Pitts Aff. ¶¶ 4–7;

Def's Mem. Supp. Summ. J. [22] at 2–3 and 13–14.  For these seven Plaintiffs, Pitts moves the

Court to adopt Pitts's calculations of the overtime owed.

In their Response to Pitts's Motion, Plaintiffs attached deposition testimony from Billy

Pitts and Pitts office workers admitting failure to pay correct overtime to employees paid in cash

and routinely discarding timecards for employees paid in cash.  Also, each Plaintiff filed a

declaration estimating his dates of employment with Pitts, the amount of uncompensated weekly

travel time, and the amount of unpaid weekly overtime.  Plaintiffs contend that conflicts between

their proffered evidence and Billy Pitts's sworn testimony constitute genuine issues of material

fact precluding summary judgment against their claims.

## II.   STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil

Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

---

[2]29 U.S.C. § 254 (2006).  Billy Pitts testified that he paid drivers on the Camp Shelby contract two hours a day for their travel time, and he paid riding laborers one hour a day for travel.  Pls.' Resp. [25] Ex. 31, Pitts Dep. 39:25–41:22.  But there is evidence that drivers claim that they were not paid for the full amount of travel time (*see Id.*, Ex. 10, Fisher Decl. ¶ 11; Ex., 22, C.A. Nelson Decl. ¶¶ 5, 7, and 9), and most employees who rode to worksites dispute having received any travel-time compensation.  *Id.*, Exs. 1, 2, 4, 6, 9, 11–14, 16, 19, 20, 23–26.  Despite this implication from the record that Billy Pitts made a practice of differentiating between compensability of travel time on the basis of whether employees drove or rode to the worksite, Pitts's Motion for Summary Judgment does not make this differentiation but argues that "to the extent that Plaintiffs are making a claim for travel time, any alleged travel time in this case is exempt under the provisions of the Portal-to-Portal Act."  Defs.' Mem. Supp. Summ. J. [22] at 3.

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The non-

moving party must then "go beyond the pleadings" and "designate 'specific facts showing that

there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations,

speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute

for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*,

276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such

contradictory facts exist, the court may "not make credibility determinations or weigh the

evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

"Rule 56 does not impose upon the district court a duty to sift through the record in

search of evidence . . . ." *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 379–880 (5th Cir.

2010) (citations and quotations omitted). In this case, both parties have at times offered factual

assertions without record citation. For example, Pitts's Reply [26] frequently offers the blanket

observation that a Plaintiff's declaration conflicts with Billy Pitts's deposition testimony without

4

citing the deposition or explaining exactly how the testimony conflicts.  Such arguments cannot

be considered because they place the burden on the Court to review the numerous depositions

and find arguments for the parties.

III.    ANALYSIS

"The Fair Labor Standards Act mandates that 'no employer shall employ any of his

employees . . . for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate not less than

one and one-half times the regular rate at which he is employed.'" *Harvill v. Westward*

*Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting 29 U.S.C. § 207(a)(1)).  Under

Section 16(b) of FLSA, an employee may sue for unpaid minimum wage, unpaid overtime

compensation, and liquidated damages.  29 U.S.C.A. § 216 (2011).

This Court has jurisdiction over the Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331

(2006), which grants district courts original jurisdiction over federal questions.  The parties have

not disputed the Court's jurisdiction, and Pitts raises no objection in his Motion for Summary

Judgment to the applicability of FLSA to the Pitts business entity.[3]

A.      Compensability of Travel Time

The primary dispute is whether Plaintiffs' travel time was compensable in light of the

Portal-to-Portal Act.  The Portal-to-Portal Act provides that "no employer shall be subject to any

liability or punishment under the [FLSA]" for failure to compensate employees for "(1) walking,

---

[3]In the Answer [10], Pitts denies being an "employer" as defined by FLSA statutes.  But
Pitts abandoned this issue in subsequent pleadings.  *Sanders v. Unum Life Ins. Co. of Am.*, No.
SA-06-CQA-514-FB, 2007 WL 2751892 at *7 (W.D. Tex. June 21, 2007) ("[T]he Fifth Circuit
has found that when a plaintiff or defendant fails to pursue a claim or defense beyond the party's
initial complaint or answer, the claim or defense is deemed abandoned.") (citations omitted).

riding, or traveling to and from the actual place of performance of the principal activity or

activities which such employee is employed to perform, and (2) activities which are preliminary

to or postliminary to said principal activity or activities . . . ."  29 U.S.C. § 254.

But, 29 C.F.R. § 785.38 interprets the Portal-to-Portal Act as it applies to employees

required to arrive at a particular site for meeting purposes prior to traveling to another worksite:

> Time spent by an employee in travel as part of his principal activity, such as
> travel from job site to job site during the workday, must be counted as hours
> worked. Where an employee is required to report at a meeting place to receive
> instructions or to perform other work there, or to pick up and to carry tools, the
> travel from the designated place to the work place is part of the day's work, and
> must be counted as hours worked regardless of contract, custom, or practice.  If an
> employee normally finishes his work on the premises at 5 p.m. and is sent to
> another job which he finishes at 8 p.m. and is required to return to his employer's
> premises arriving at 9 p.m., all of the time is working time.  However, if the
> employee goes home instead of returning to his employer's premises, the travel
> after 8 p.m. is home-to-work travel and is not hours worked. *(Walling v.
> Mid-Continent Pipe Line Co.*, 143 F. 2d 308 (C.A. 10, 1944)).

29 C.F.R. § 785.38 (2011).

Courts deciding whether to compensate employees for travel time from designated

meeting points to a worksite have primarily considered whether employees' presence at the

meeting point was required by the employer and what types of duties employees were required

or requested to perform at the meet site.  *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994); *Smith

v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1288 (10th Cir. 2006); *Gortat v. Capala Bros., Inc.*,

257 F.R.D. 353, 360–361 (E.D.N.Y. 2009); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp.

2d 693, 703–704 (E.D. Tex. 2007); *Preston v. Settle Down Enters., Inc.*, 90 F. Supp. 2d 1267,

1280–1281 (N.D. Ga. 2000); *Dole v. Enduro Plumbing, Inc.*, No. 88-7041-RMT (KX), 1990 WL

252270, at *4–5 (C.D. Cal. Oct. 16, 1990).

The majority of decisions denying compensation involve non-mandatory attendance at the meeting site.  *See Vega*, 36 F.3d at 425; *Smith*, 462 F.3d at 1280–1281, 1288; *Johnson*, 554 F. Supp. 2d at 704.  *But see Smith*, 462 F.3d at 1287 ("when the travel is 'solely for the transportation of employees to and from their principal place of work, then . . . the drivers are 'riding or traveling' within the exclusion of Section 4 of the Act.'") (quoting *DA & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552, 555); *Dolan v. Project Constr. Corp.*, 558 F. Supp. 1308, 1309–1311 (D. Colo. 1983).  In *Dole*, where travel time was found to be compensable, the court found that employees' presence at the meet time was required and the employees' duties at the meet site were integral to their work.  *Dole*, 1990 WL 252270 at *5.

According to *Smith*, activities that are "an integral and indispensable part of the principal activities for which covered workmen are employed" are compensable under the Portal-to-Portal Act.  *Smith*, 462 F.3d 1274 at 1287.  Thus, to determine whether the Plaintiffs' travel time is compensable, this Court must evaluate whether the Plaintiffs were required to attend the morning meet time and whether the activities they performed prior to traveling were integral to their jobs. If so, then travel time should be compensable under the Portal-to-Portal Act and the "continuous workday rule."  "Under the 'continuous workday,' or 'whistle to whistle,' rule, the workday is defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *Johnson*, 554 F. Supp. 2d 693, 704 (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005) (quoting 29 C.F.R. § 790.6(b) (punctuation omitted)).

In the case at hand, it is undisputed that Pitts required employees to meet at the Pitts office prior to traveling to worksites.[4]  Whether Pitts required employees to perform tasks at the Pitts office, however, is disputed.  Pitts states that riding employees were not required to perform any work during the meet time, and Plaintiffs' declarations provided that employees were required to load tools.  The Court finds that when the evidence is viewed in the light most favorable to the Plaintiffs, a question of fact remains whether the travel time was compensable.

B.      Burden of Proof

Assuming travel time is compensable, Pitts argues that the depositions and/or declarations in evidence describing the Plaintiffs' claims are so speculative that the claims should either be dismissed altogether or adjudicated in accordance with Pitts's own calculations of damages owed.  Neither side arrives at this issue with totally clean hands.

The Supreme Court explained the applicable burden of proving FLSA wage violations in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946) (superseded by statute on other grounds).  The burden first falls on the employee; but, when an employer's records are inadequate, the burden shifts to the employer:

> An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. . . .
>
> . . . But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . we hold that an employee has carried out his burden if he proves that he has in fact performed work for which

---

[4]All admissible Plaintiffs' declarations provide that Pitts required employees' attendance at the morning meet time.  Likewise, Billy Pitts states in his own affidavit that "[t]he laborers were simply *required* to arrive at the location in Waynesboro [Pitts office] in order to be transported to Camp Shelby."  Defs.' Mot. [21] Ex. N, Pitts Aff. ¶ 12 (emphasis added).

> he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Anderson*, 328 U.S. at 686–88.  Thus, when an employer's wage and hour records are unreliable, an employee claiming FSLA violations meets the required burden of proof by showing "there is a basis for a reasonable inference as to the extent of the damages."  *Id.* at 688 (citations omitted).

The *Anderson* Court reasoned that "[d]ue regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed."  *Id.*  at 687.  Indeed, in the years since *Anderson*, courts have applied *Anderson*'s burden-shifting scheme to cases where employers failed to maintain FSLA-compliant records.  *See Allen v. Bd. of Public Educ. for Bibb Cnty*, 495 F.3d 1306, 1315–1316 (11th Cir. 2007); *Castillo v. Givens*, 704 F.2d 181, 194 (5th Cir. 1983) (citations omitted) (overruled on other grounds by *McLaughlin v. Richland Shoe*, 486 U.S. 128 (1988)); *Perez v. Palermo Seafood, Inc.*, 548 F. Supp. 2d 1340, 1346–1347  (S.D. Fla. 2008).

In the case at hand, testimony from Billy Pitts, president of W.C. Pitts Construction Co., Inc.; Chrissie McCollough, payroll assistant; and Brenda Rigby, office assistant, establish that Pitts failed to comply with FSLA's recordkeeping standards generally set forth in 29 U.S.C. § 211 (2006).  McCollough testified that she was told to pay everyone straight time for all hours and to discard timecards for all employees paid in cash.  Pls.' Resp. [25] Ex. 29, McCollough Dep. 10:14–11:10, 29:1–22.  Billy Pitts admitted that he did not pay overtime to employees paid

in cash.  Pls.' Resp. [25] Ex. 31, Pitts Dep. 25:11–26:14.  Billy Pitts also testified that although

his secretaries may have kept some timecards, it was his practice to discard timecards for

employees paid in cash as well as employees paid by check.  *Id.* 22:7–24:12.  Billy Pitts testified

that other than timecards, Pitts retained no records showing who worked any particular week on

the Camp Shelby project.  *Id.* 19:12–15.  Brenda Rigby similarly acknowledged that she was

unsure whether standby workers filled out employee information sheets for Pitts's employment

records.  Pls.' Resp. [25] Ex. 32, Rigby Dep. 30:19–31:12.  Rigby also testified that Pitts

maintains no documents showing which employees were paid cash during any particular period.

*Id.* 32:15–20.  The Court therefore finds that because Pitts failed to keep FLSA-compliant

records, Plaintiff's initial burden is to show a "reasonable inference."  *Anderson*, 328 U.S. at

688.

       But Pitts also contends that unidentified "company records" negate Plaintiffs' claims and

that the employees' evidence is too slim to satisfy their burden.  First, Pitts generically mentions

"company records" in Billy Pitts's affidavit and in summary judgment memoranda.  Even if

these statements could survive Rule 1002 of the Federal Rules of Evidence, the argument seems

to miss the mark because the disputed overtime generally relates to employees who were paid in

cash without any recordkeeping.

       Second, Pitts supports the sufficiency argument with the distinguishable opinion in

*Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428.  In *Harvill*, the plaintiff offered no

"evidence of the amount or the extent of hours she worked without compensation."  433 F.3d at

441 (affirming summary judgment of FLSA claim for failure to prove a "reasonable inference"

of compensable time).  By contrast, the Fifth Circuit reversed summary judgment in favor of an

employer in *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, No. 08-50316, 2009 WL 2391400 (5th Cir. Aug. 4, 2009) (unpublished).  There, the employee "testified that on a number of occasions his managers knowingly required him to work anywhere from half an hour to two hours of overtime for which he was never paid."  *Id.* at 457.  Like many of the Plaintiffs in this case, the employee offered no documentary evidence to support his testimony. *Id.* at 460 (noting that another employee was the only to offer supporting documents).

In this case, a number of Plaintiffs submitted properly executed declarations stating the extent of the unpaid overtime and a description of the compensable time.  This was sufficient, *id.*, especially when coupled with Pitts's admission that it failed to properly pay overtime.  *See generally* Defs.' Mem. [22] (admitting that seven Plaintiffs are due unpaid overtime); Pls.' Resp. [25] Ex. 29, McCollough Dep. 29 (stating that overtime was calculated at straight time rate). Billy Pitts's testimony controverting Plaintiffs' declaration statements merely raises a question of fact for the jury.

1.    Sufficient Claims

Plaintiffs with viable claims include Patrick McCann, Terrial Blakely, Cedric Blakely, Isaac Harris, Patrick Fisher (to the extent not exempt), Bernard Gray, Joseph Nichols, Darnell Cameron, Marcus Figgers, Eddie Harris, Thomas Jackson, Dantel Smith, Larry Bishop, Wesley Chambers, Joseph Moss, Charlton Nelson,[5] DeAundrae Parker, Eric Pittman, and Kevin Smith.

---

[5]The Court presumes that the declaration headed "Antoine Nelson," apparently signed by "Antoine Nelson" and labeled on the CM/ECF system as the declaration of "C. A. Nelson," is the declaration of Charlton Nelson.  *See* Pls.' Resp. [25] Ex. 22, C. A. Nelson Decl.

2.      Defective Claims

a.      Unsigned Declarations

Other claims are not supported.  Six Plaintiffs rely exclusively on unsigned declarations to support their claims and have never sought leave to supplement after Pitts noted the defect. These declarations are not evidence and must be disregarded.  *See Bonds v. Cox*, 20 F.3d 697 (6th Cir. 1994) ("Given the explicit language of [28 U.S.C. § 1746]," unsworn, undated affidavits "must . . . be excluded from consideration."); *Orr v. Orbis Corp.*, No. 1:07-CV-2653-TWT-SSC, 2010 WL 3368124, at *2–3 (N.D. Ga. July 30, 2010) (citations omitted).  None of these Plaintiffs offered any other evidence to support their claims which must be dismissed.

More specifically, Plaintiffs Melvin Bishop, Donald Lathan, Willie Loper, and Terence Stokes offer no admissible evidence to establish a reasonable inference that they are entitled to recover.  *See Geiserman v. MacDonald*, 893 F.3d 787, 793 (5th Cir. 1990) (holding that facts must be supported by admissible evidence).  Similarly, Antonious Nelson's declaration is not signed.  And his deposition—offered by Pitts—shows that he primarily seeks overtime for non-compensable interstate transportation, addressed below.  As for the remaining time, he has offered no evidence that it was more than *de minimis*, and Nelson states that he has not "calculated" his lost overtime.  Defs.' Mot. [21] Ex. L, Nelson Dep. 23.  Lastly, Plaintiff Alton Cooley has filed nothing to dispute Pitts's calculation of overtime due him for 24 hours unpaid overtime at base rate of $8.00 an hour, plus an additional $96.00.

Thus, the Court finds that the claims of Melvin Bishop, Donald Lathan, Willie Loper, Antonius Nelson, and Terence Stokes are hereby dismissed with prejudice, and Alton Cooley is entitled to a judgment against Pitts in the amount of $192.00.

        b.      Insufficient Declarations

The declarations of LaDerry Loper and Daniel Moore are insufficient to establish that they worked at Pitts within the relevant statute of limitations window.  All claims before June 2007 are stale.  In his declaration, Loper merely states that he worked for Pitts several months in 2007, but he does not "recall the exact dates."  Pls.' Resp. [25] Ex. 16, L. Loper Decl. ¶ 1. Similarly, Moore states that he worked in 2007 or 2008, but that he does not "recall the exact dates."  *Id.*, Ex. 19, Moore Decl. ¶ 1.  Absent other evidence, the record offers nothing more than speculation that either Plaintiff worked for Pitts after June 2007.[6]

Finally, Plaintiff Lorenzo Fields signed his declaration setting forth his estimated employment period and amount of unpaid overtime; but, Fields's declaration directly conflicts with his deposition testimony that Pitts did pay him overtime.[7]  "[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."  *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citations omitted).  Because the conflict between Fields's declaration and deposition is

---

[6]Plaintiffs Joseph Moss, Joseph Nichols, Deaundrae Parker, and Eric Pittman survive this argument.  All four swore that they worked during the limitations window.  Pitts's unidentified "company records," if competent, would at best create a question of fact.

[7]In his deposition, Fields stated that he was paid overtime and characterized his dispute with Pitts as a contractual dispute over the correct hourly rate for work performed in Texas and Pitts's decision to deduct funds from Fields's paycheck to cover the cost of damages to one of Pitts's trucks.  Defs.' Mot. [21] Ex. H, Fields Dep. 13:19–14:25; 22:7–23:23.

13

unexplained, Fields's deposition testimony is outcome-determinative.  And to the extent Fields's deposition reflected an FLSA claim—which is not apparent—the claim would be *de minimis*. *See Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414 (5th Cir. 1990) (discussing the *de minimis* rule).

C.    Motor Carrier Exemption

Finally, Pitts argues that two Plaintiffs who drove trucks for Pitts, Patrick Fisher and Antonious Nelson, fall within FLSA's motor carrier exemption, 29 U.S.C. § 213(b) (2006). Under this provision, "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" is exempt from FSLA.  29 U.S.C. § 213(b)(1).  Because this provision is an exemption from FLSA, however, it is "construed narrowly against the employer, and the employer bears the burden of proving applicability of a claimed exemption."  *Barefoot v. Mid-America Dairymen, Inc.*, No. 93-1684, 1994 WL 57686 at *2 (5th Cir. Feb. 18, 1994) (citations omitted).  "According to the Department of Labor (DOL) regulations enforcing the FLSA, the application of the MCA [Motor Carrier Act] exemption to an employee 'depends both on the class to which the employer belongs and on the class of work involved in the employee's job.'" *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472 (5th Cir. 2010) (quoting 29 C.F.R. § 782.2(a)).[8]

To carry the burden of proving the motor carrier exemption, the movant's evidence must show that (1) the employee is employed by a carrier "whose transportation of passengers or

---

[8]Although Pitts failed to raise the issue in its Answer, "a defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond."  *Rogers v. McDorman*, 521 F.3d 381, 386 (5th Cir. 2008) (citation and punctuation deleted).  Such is the case.

property by motor vehicle is subject to" jurisdiction of the Secretary of Transportation "under

section 204 of the Motor Carrier Act [codified at 49 U.S.C. § 31502]" and (2) the employee is

"engage[d] in activities of a character directly affecting the safety of operation of motor vehicles

in the transportation on the public highways of passengers or property in interstate or foreign

commerce within the meaning of the Motor Carrier Act." *Id.* (citations omitted).

"To be subject to the Secretary of Transportation's jurisdiction . . . a motor carrier must

be engaged in interstate commerce." *Id.* (footnote omitted).  Title 49 U.S.C.A. § 13102 (2011)

defines "motor carriers" as "persons 'providing motor vehicle transportation for compensation.'"

*Id.* n.8.  "Interstate commerce" is "the actual transport of goods across state lines or the intrastate

transport of goods in the flow of interstate commerce."  *Id.* at 472 (citations omitted).  Because

the record reflects that Pitts employed drivers to haul gravel and other goods across state lines,

the Court finds that there is evidence to support the first prong of the motor carrier exemption.

*See* Defs.' Mot. [21] Ex. G, Fisher Dep. 31:5–35:10; *Id.* Ex. L, Nelson Dep. 12:11–17:24.

Whether an employee meets the second prong is determined on a weekly basis:

FLSA regulations promulgated by the DOL and the DOT's notice of interpretation
have clarified that if drivers can be reasonably expected to perform interstate
transport, the MCA exemption applies.   The FLSA regulations state that
generally, if the employee's job duties are "such that he is (or ... is likely to be)
called upon in the ordinary course of his work to perform, either regularly or from
time to time, safety-affecting activities" of a driver, he comes within the MCA
exemption "in all workweeks when he is employed at such job."

*Songer*, 618 F.3d at 474 (quoting 29 C.F.R. § 782.2(b)(3)).

In the present case, Plaintiff Antonious Nelson testified in his deposition that he believes

Pitts owes him overtime for transporting goods from Alabama to Mississippi, his time at Camp

Shelby, and possibly other unnamed projects.  Plaintiff Patrick Fisher appears to claim overtime

for time worked on the Camp Shelby project and possibly other unnamed projects.  Nelson's

claims for unpaid overtime earned in his interstate travel between Alabama and Mississippi fall

within the motor carrier exemption.[9]  The Court declines, however, to grant a blanket exemption

of all claims raised by Fisher because the record is not sufficient to address whether Fisher

"could reasonably have been expected to make one of [Pitts]'s interstate runs" during the periods

he was assigned to the Camp Shelby contract.  *Songer*, 618 F.3d 467, 475.

IV.   MOTION IN LIMINE

Pitts's Motion in Limine seeks exclusion of all wage claims accruing outside of the

statute of limitations applicable to this case.[10]  The Plaintiffs agreed to this limitation in their

Response to the Motion in Limine.  Finding that the motion is well-taken and unopposed, Pitts's

Motion in Limine is granted.

V.   CONCLUSION

Based on the foregoing, Pitts's Motion for Summary Judgment [21] is denied in part and

granted in part, and Pitts's Motion in Limine [21] is granted.  The parties are instructed to

contact the Court's courtroom deputy to set the matter for a pretrial conference.

**SO ORDERED AND ADJUDGED** this the 7th day of September, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[9]As discussed above, Nelson failed to substantiate any other claims.

[10]The statute of limitations for a FLSA action is two years, unless the employer's violations are found to be willful—in which case a three-year statute of limitations applies.  29 U.S.C. § 255 (2006).  "The determination of willfulness is 'a mixed question of law and fact.'"  *Allen*, 495 F.3d 1306, 1324 (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003), *aff'd*, 546 U.S. 21).

16